UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CASE NO. 4:24-CR-00010 RLW/SPM

UNITED STATES OF AMERICA

vs.

MOHD AZFAR MALIK, M.D.

_____/

**MOHD AZFAR MALIK'S MOTION TO COMPEL *BRADY* MATERIAL**

Mohd Azfar Malik, M.D., files this motion to compel *Brady* Material and states:

Dr. Malik, a well-respected doctor in this community for the past 40 years, has been charged in an Indictment that tests the outer-bounds of our federal criminal code. We have filed motions to dismiss based on the unprecedented charges, including because the Indictment does not allege that Dr. Malik ordered drugs for his patients outside of a legitimate medical purpose.

In fact, these were (1) real patients, (2) actually treated by Dr. Malik or in Dr. Malik's practice, (3) who suffered from depression or other real psychological issues, (4) spoke to Dr. Malik or another doctor about their issues and their treatment plan, either in person or by phone or virtually; (5) who benefitted from the Ketamine infusions or esketamine nasal sprays, (6) during the infusions or sprays, saw the co-defendant or a nurse speak to Dr. Malik on the phone about the treatment, (7) did not (other than on a few occasions) complain about their treatment, and (8) only became agitated after the government contacted them.

The Indictment charges 12 substantive counts (3-14) and each of those counts lists a particular infusion or nasal spray associated with a particular patient (ten total patients are identified by initial). The defense requested and received the names of these patients. The defense also requested the files of these patients because Dr. Malik does not have many of them, but the government has not received them or reviewed them (which is quite surprising since they have been listed in the Indictment).

When the defense learned that the government had not even received or reviewed the patient files for the patients in which Dr. Malik is indicted, it made a *Brady* request for the interview reports of these patients. The defense explained to the government areas in which it believed these patients, if they had been interviewed, would have provided *Brady* material. The government said that it was not conceding that the areas constituted *Brady*, but agreed to provide the material. Instead of providing the interview reports, however, the government provided only a few snippets of what these patients had to say. This powerful exculpatory evidence – showing that Dr. Malik acted in good faith for the good of his patients – continues to trickle in day by day. Just by way of example, those include:

- T.A. (counts 5 and 6), who explained that she had been a patient of Dr. Malik going back to the time when Dr. Malik was a resident, that her nasal spray treatment were administered by qualified providers, that she "loves" Dr. Malik and that "he saved her life four times."
- K.B. (count 8), who explained that "the infusions worked well for [her]."
- C.J. (count 12), who explained that she "was feeling better" since her

treatment.

- R.B. (count 11), who explained that the initial Ketamine infusion had to stop because of his high blood pressure, and that "Dr. Ali made a phone call to someone [he] believed to be Dr. Azfar Malik" to discuss the issue and then was prescribed blood pressure medication and advised to see a cardiologist.

- J.C. (count 14), who explained that when his depression was not getting better, Dr. Malik "discussed other options and ... brought up ketamine treatments as a possibility." Then, Dr. Malik referred J.C. for treatment, which "improved" his depression and anxiety. Even after stopping the treatments, he has "continued to see Dr. Azfar Malik via telehealth."

While these snippets are critically important for Dr. Malik's defense, they do not tell the whole story by a long shot. These patients, as well as the others in the Indictment, demonstrate that Dr. Malik was a doctor acting in good faith in the treatment of his patients. If he was acting in good faith, the government cannot sustain a conviction. *Ruan v. United States*, 597 U.S. 450, 455 (2022).

Nevertheless, the government stubbornly refuses to provide the reports of interviews of these patients (or any other interview) to the defense, which would demonstrate this good faith. While interview reports are generally not discoverable under Rule 16, they must be turned over if they contain *Brady* material. The risk of prejudice to the defense is heightened in this case where many of patient files are not in the control or custody of the defense (they belong to a group who purchased Dr.

Malik's practice) and government has not received or reviewed these patient files. In addition, the defense is concerned about upsetting these fragile patients with further interviews about their condition and treatment. If the government already has interviewed them and they have explained to the government that they were actually treated for a real condition, how that treatment was done, their background, their relationship with Dr. Malik and his practice, the results of the treatment, and so on -- that is all *Brady* material and discoverable. And it will be difficult for the government to pick and choose the squibs from the report to disclose without leaving out critical and helpful information to the defense.

The government is not in the best position to identify the *Brady* material in this case. In fact, the government had not even disclosed the above highly exculpatory material until requested by the defense, and even then, did so grudgingly – saying it was not conceding that it was helpful material to the defense. But, of course, it is. And we are sure that the entire interview report of each patient will be chockful of helpful material that the government—who sees Dr. Malik in a very different light than his patients and the community—may not see at first glance.

"The purpose of the Brady principle is to assure the defendant a 'fair trial.'" *United States v. Jones*, 34 F.3d 596 (8th Cir. 1994) (*quoting Evans v. Janing*, 489 F.2d 470, 474 (8th Cir. 1973)).  Requiring the government to turn over the interview reports of the patients will help the defense receive a fair trial in this matter.

    Respectfully submitted,

    **MARKUS/MOSS PLLC**
    40 N.W. Third Street, PH1
    Miami, Florida 33128
    Tel: (305) 379-6667
    markuslaw.com

    By:    /s/ David Oscar Markus
           David Oscar Markus
           dmarkus@markuslaw.com

           /s/ Lauren Field Krasnoff
           Lauren Field Krasnoff
           lkrasnoff@markuslaw.com