UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CASE NO. 4:24-CR-00010 HEA

UNITED STATES OF AMERICA

vs.

MOHD AZFAR MALIK, M.D.

_____/

**SENTENCING MEMORANDUM**

Consistent with the joint recommendation of the parties and the United States Sentencing Guidelines, we are respectfully requesting that the Court sentence Dr. Malik to one year of probation.

For the last four decades, Dr. Azfar Malik has been a pioneer in psychiatry, a pillar of the St. Louis community, a tireless advocate for those in need of mental health care, and a devoted father, son, and husband. He has been a mentor to students and young doctors and a compassionate physician who has treated some of society's most vulnerable. The offense conduct in this case was serious; but it stands in sharp contrast to the otherwise exemplary life of service, selflessness, and integrity that has defined Dr. Malik's career and relationships.

Dr. Malik is not perfect – but he is a repentant, remorseful, and non-violent offender, whose crimes are an aberration from his otherwise well-led life. The Sentencing Guidelines, the history and personal characteristics of Dr. Malik, his

complete acceptance of responsibility, the extraordinary collateral consequences of this conviction, Dr. Malik's current medical diagnosis, and the other § 3553(a) factors support the joint recommendation of the parties: a probationary sentence that does not include incarceration. A probationary sentence is "sufficient, but not greater than necessary," to satisfy the factors outlined in 18 U.S.C. § 3553(a).

### I. The parties and the Sentencing Guidelines recommend a probationary sentence.

The parties agree that the loss amount in this matter is $19,442.16. That relatively low amount ends up placing Dr. Malik in Zone A of the Sentencing Table. The United States Sentencing Guidelines recommend "a sentence other than a sentence of imprisonment" because Dr. Malik qualifies for an adjustment as a Zero-Point Offender under § 4C1.1 and the sentencing guideline range is in Zone A of the Sentencing Table. USSG § 5C1.1, cmt. n. 10. The prosecution and the defense concur that Dr. Malik should be sentenced to probation.

Based on a total offense level of 8 and a criminal history category of I, the guideline imprisonment range in this case is zero months to six months, placing the guideline range in Zone A of the Sentencing Table. PSR ¶¶ 47, 51, 84; USSG § 5A. Section § 5C1.1 recommends to the Court when the imposition of a term of imprisonment is appropriate. Where the applicable guideline range is in Zone A, a sentence of imprisonment is not required (unless the applicable guideline in Chapter Two expressly requires a term of imprisonment, which is not the case here).

USSG § 5C1.1(b). However, with the addition of the Zero-Point Offender under § 4C1.1, the United States Sentencing Commission went much further than to merely recommend that a sentence of imprisonment is not required. Instead, where a defendant is in Zone A of the Sentencing Table and receives an adjustment as a Zero-Point Offender, the Commentary now specifically advises that a sentence of probation is appropriate. USSG § 5C1.1, cmt. n. 10. A sentence of probation, as jointly recommended by the parties, is also the sentence recommended by the sentencing guidelines.

## II. The offense conduct is a complete aberration from the personal characteristics that have defined Dr. Malik's life and career.

Dr. Malik's life is marked by a lifetime of giving to and serving others before himself. The personal characteristics that define him are best exemplified in his devotion to his patients and his practice, to his mentees and those he works with, and to his family. The best source of information about Dr. Malik's life comes from the letters of support written by patients and their families, colleagues, and family members who have known Dr. Malik for years and sometimes decades. *See* Exhibit A, *Letters in Support of Dr. Azfar Malik*. The letters offer first-hand experiences and knowledge of Dr. Malik beyond the case or the offenses before the Court. They are powerful and moving – because they genuinely reflect the personal characteristics of Dr. Malik. Having full knowledge of Dr. Malik's criminal actions, respected and prominent people in the community wrote letters to inform the Court about how much

they admire and respect Dr. Malik, despite his guilty conduct and plea.

We provide a summary of Dr. Malik's contributions to highlight the most important factors supporting a non-custodial sentence.

<u>The Practice of Medicine and Dr. Malik's Patients</u>

Over more than four decades, Dr. Malik has built an enduring legacy as a compassionate and skilled psychiatrist. He began his career in St. Louis, following impressive residencies in Pakistan and Malta. He completed his residency at Saint Louis University before enrolling in Washington University in St. Louis to complete his MBA in Health Science Management. As a founder, Chief Medical Officer, and CEO of CenterPointe Hospital, Dr. Malik helped build one of the region's most respected psychiatric institutions. He served in leadership at CenterPointe until 2022, delivering evidence-based and outcome-driven psychiatric care to the underserved population in St. Louis.

Dr. Malik's professional accomplishments are most clearly illustrated through his relationship with his patients. Dr. Adam Sky, who inherited many of Dr. Malik's patients, writes, "One of my new patients, a gentleman who Dr. Malik has followed his entire adult life, stated quite succinctly, 'the only reason I'm alive today is because of Dr. Malik, I hope you can be half as good as he is.'" *Letter from Adam Sky, MD*. "His uncanny ability to focus quickly on elusive illness, analyze causations, and chart cogent plans of management has pulled countless souls up from the desolate agony of psychiatric illness." *Letter from Ahmed Jafri, MD*. A colleague wrote, "I have seen

patients with chronic mental illness cycling through hospitals every month and once treated by Dr. Malik, they were able to stabilize and lead healthier, more adjusted lives. Some of what I have witnessed has been nothing short of extraordinary." *Letter from Karen Kasten.* Similar sentiments were shared by so many of his long-term patients and their families. The wife and mother of two of Dr. Malik's patients wrote, "I don't know of any other psychiatrist who's done so much for the mental health of our community, with unwavering empathy, care, concern, and knowledge of medicine to treat his patients … We are saddened that we have to go to a new psychiatrist." *Letter from Mary Hittler.* Another patient's family member wrote, "What saddens me most is knowing that right now, he is unable to provide care to those who need him." *Letter from Mary E. Kelley.*

Dr. Malik's influence extends beyond patient care. He mentored young physicians and medical students – both formally, in his role as an Assistant Clinical Professor at Saint Louis University School of Medicine, and informally, through his leadership role at CenterPointe and other clinics. The letters of support describe how Dr. Malik guided junior professionals with humility, wisdom, and a deep sense of responsibility:

> He is an exceptional physician that dedicates his life to helping those he treats to sustain a more stable and healthier life. I could recall hundreds of individual success stories that I have had the pleasure of witnessing firsthand but the result in all of them is that [Dr. Malik] is truly responsible for saving hundreds if not thousands of lives.

*Letter from Tonya Dierkes, RN.* The former CEO of CenterPointe Hospital wrote, "It

is rare to find a clinician that is so dedicated to his craft, who has sacrificed so much of his time caring for, supporting, and truly bettering the mental health community." *Letter from Karen Kasten.*

Dr. Malik cannot take back his actions that led to the convictions in this case. However, when balanced with over forty years of extraordinary service to his patients, to his colleagues, and to the practice of medicine, the Court should see how the instant offense is an extraordinary deviation from an otherwise admirable life. Dr. Malik's decades-long dedication to clinical excellence, mentorship, and leadership in psychiatric research and innovation all weigh heavily in favor of a probationary sentence.

<u>Dr. Malik as a Father, Husband, and Son</u>

To describe the Malik family as "close-knit" would not do justice to the relationship and bond between Dr. Malik and his wife, children, parents, and extended family. Dr. Malik's life has been defined by his commitment to caring for his children and the rest of his family – and his children view him as the moral compass of their clan.

Since establishing themselves in St. Louis, Dr. Malik and his wife Maheen have maintained a house full of support, raising their three sons, Areeb, Zayir, and Samir, with their extended family. Living under one roof were Dr. Malik and his wife Maheen; their three sons; Dr. Malik's brother, sister-in-law, and their two children; Dr. Malik's sister; and Dr. Malik's parents. The family did not live like this out of

financial necessity. The multi-generational living arrangement was a deliberate choice rooted in love, tradition, and the desire to raise their children in an environment surrounded by common values and support. This model reflected Dr. Malik's cultural upbringing, but also his belief that children flourish when they're surrounded by this type of supportive togetherness. Dr. Malik and Maheen did not just build a home for their children – they built a legacy of care that sustained the family.

The example that Dr. Malik set for his sons is illustrated in the way that he cared for his late mother. In her final years, as she physically and mentally declined, Dr. Malik became his mother's caretaker. Dr. Malik's sons note how their father's care for his mother set an example of how family cares for each other. About his father and grandmother, Zayir Malik writes:

> In her final years, he went out of his way to provide care for her to make feel as comfortable as possible. This required a lot of time, coordination, consulting with physicians, and supporting his younger siblings as they dealt with the decline of their mother. His demeanor through this time reflected an unwavering respect, a form of honoring one's parents that I'm not sure exists much anymore. I saw this play out not just as an adult, but as a new-ish ER doctor had borne witness to the pain of loss and tragedy of a slow deterioration time and time again at work. Yet my dad carried this weight as if it were nothing, as if it were just another simple duty of his to support everyone.

*Letter from Zayir Malik.*

In short, Dr. Malik built a legacy of care, not just in his professional life, but in his home as well. Viewed in the context of a lifetime defined by service, compassion, and personal responsibility, the offense constitutes an aberration – and a sentence of

one year of probation is sufficient to account for both he seriousness of the conduct and the uniquely mitigating circumstances of Dr. Malik's personal and professional history.

### III. Dr. Malik's substantial civil settlement represents his complete acceptance of responsibility.

Dr. Malik has shown incredible remorse for his offense and has made efforts to correct his wrongs through a substantial Settlement Agreement with the United States through the Department of Justice, on behalf of the Department of Health and Human Services, and the State of Missouri and its Department of Social Services. Dr. Malik agreed to pay, and indeed did pay $501,556.00, of which $250,778.00 is restitution.

Title 18 U.S.C. § 3553(a)(7) requires the Court, "in determining the particular sentence to be imposed," to consider "the need to provide restitution to any victims of the offense." This consideration includes the determination that a reduced sentence is reasonable and appropriate when a defendant has made substantial payments towards restitution. *See United States v. Hariston*, 96 F.3d 102, 105 (4th Cir. 1996) (downward departure permissible for defendant's "extraordinary restitution," in pre-*Booker* case); *United States v. Kim*, 364 F.3d 1235, 1238–39 (11th Cir. 2004) (downward departure justified for fraud defendants who paid extraordinary restitution and showed great remorse); *United States v. Roach*, 2005 WL 2035653, at \*7 (N.D. Ill. 2005) ("any defendant's prompt payment of restitution is a significant

mitigating factor appropriately considered in imposing sentence.").

In *United States v. Roach*, the district judge, upon re-sentencing of the defendant for defrauding her employer, noted that Ms. Roach promptly paid full restitution of $241,000 soon after her originally imposed sentence. *Roach*, 2005 WL 2035653, at *7. Although the defendant's guidelines recommended a prison sentence, the court sentenced her to probation. In deciding on a probationary sentence, the Court considered § 3553(a)(7) and reasoned:

> It is only fair . . . to view Ms. Roach's prompt payment of restitution as a significant mitigating factor that is appropriately considered in determining what sentence to impose. It is true that Ms. Roach, unlike many defendants, had resources that enabled her to pay prompt restitution, and the Court agrees that she should not be treated more favorably simply because she possessed those resources. But it is equally true that there are plenty of defendants who have resources of one kind or another to draw upon – either personally or via family members – but who make no effort to pay restitution, promptly or otherwise. It would unfairly penalize Ms. Roach not to consider her prompt restitution, along with her acceptance of responsibility, remorse for her commission of the crime, and her personal efforts to avoid repetition of both her compulsive behavior and her criminal acts, in determining the appropriate sentence. **All else being equal, any defendant's prompt payment of restitution is a significant mitigating factor appropriately considered in imposing sentence.**

*Id.* (emphasis added).

Here, too, Dr. Malik asks the Court to consider his early and complete restitution payment of $217,938.00 in federal restitution and $32,840.00 in state restitution. This substantial payment covers the entirety of Dr. Malik's financial liability and the Court should consider this as a significantly mitigating element that supports a probationary sentence.

### IV. Dr. Malik faces extraordinary collateral consequences because of the instant convictions.

A felony conviction comes with significant collateral consequences for any person; but for Dr. Malik, the noncustodial collateral consequences of this case will truly upend his entire life and career, in some ways exceeding the direct penalties. The collateral consequences are not merely professional losses – rather, they represent the loss of an identity built over decades in service to patients, students, and the community.

Following his plea, Dr. Malik wound down his practice and transitioned his patients to other care providers. This alone marks a painful conclusion to a professional life spent providing care and building psychiatric institutions. For Dr. Malik, this is not just a career change – it is the end of a calling.

As part of his plea, Dr. Malik will surrender his DEA registration, precluding him from prescribing controlled substances. This effectively bars him from returning to clinical psychiatry in any meaningful capacity. Moreover, he anticipates professional licensure consequences, including review by the state medical board and professional organizations. These collateral consequences impose a powerful deterrent effect – both specific and general – while reinforcing the seriousness of the offense.

Dr. Malik's reputation, career, profession have been irreparably altered. Dr. Malik acknowledges the privilege that comes with this type of professional career.

But the loss of Dr. Malik's ability to care for his patients is more than the loss of a profession – it is the loss of his identity. These very real consequences underscore that any sentence greater than probation would be greater than necessary to achieve the goals of sentencing.

> **V.  Dr. Malik's current medical diagnosis and the need for medical treatment support a non-incarcerative sentence with minimal restrictive conditions.**

Approximately ten years ago, Dr. Malik was diagnosed with prostate cancer and underwent a prostatectomy at St. Louis University Hospital. PSR ¶ 59. Unfortunately, just a few weeks ago, Dr. Malik learned that his cancer returned and cancer cells are present in his bones. Dr. Malik is still seeking additional information about the diagnosis, treatment options, and the prognosis. Under these circumstances, Dr. Malik will likely need to travel regularly to see medical specialists and to receive regular treatment at specialty hospitals outside of the Eastern District of Missouri.

In the Presentence Report, the Probation Office recommends that the Court impose standard conditions of probation, along with certain special conditions of probation that are likely typical for this offense. However, given Dr. Malik's personal characteristics and lack of criminal history, certain of these conditions seem unnecessarily restrictive. More importantly, given Dr. Malik's current medical diagnosis and need for treatment, the conditions will do more harm than good.

The Probation Office recommends that Dr. Malik be required to obtain

permission from the Court or the Probation Officer before leaving the federal judicial district. While this condition is appropriate in many cases, it would impose an undue and unnecessary burden in these particular circumstances, given Dr. Malik's recent cancer recurrence and anticipated need for ongoing medical treatment.

For nearly two years, Dr. Malik has been on pretrial release with this condition. The Probation Officer required Dr. Malik to get permission from the Court for all domestic travel (despite the Court allowing the Probation Office to give Dr. Malik permission itself). On numerous occasions, the Court granted motions allowing Dr. Malik to travel domestically for family and professional events. In each instance, Dr. Malik followed the instructions of the Probation Officer and returned to St. Louis as instructed and without issue. His track record supports the conclusion that continued domestic travel – without prior approval – is both safe and reasonable under the circumstances.

Now, Dr. Malik is facing extremely serious health challenges that will require regular domestic travel. While the Court expeditiously adjudicated each of Dr. Malik's requests to travel, Dr. Malik's health is fragile and may require regular and sometimes urgent domestic travel. Repeatedly requesting permission from the Court for domestic medical travel necessarily takes additional time and exhausts resources. The Court has trusted Dr. Malik to travel regularly during his pretrial release. Given the unique circumstances of Dr. Malik's recurrent cancer and need for medical treatment, he asks that the Court not impose this restrictive proposed domestic travel

restriction.

Additionally, the Probation Office recommends that Dr. Malik not be self-employed or be a "consultant" without written permission from the Probation Office. Given the facts and circumstances of this case, Dr. Malik asks the Court to take a more tailored approach. As a result of this conviction, Dr. Malik will no longer practice medicine by caring for patients. He does not seek to resume clinical care that would require billing. However, his livelihood depends on his ability to be self-employed and to act as a consultant on medical projects. *See* PSR ¶ 76. He seeks to retain administrative responsibilities over his businesses and consult on health projects in a non-clinical capacity. Aside from his medical practice, much of Dr. Malik's income stems from self-employment and consulting. Categorically prohibiting him from engaging in the work he is already doing would unnecessarily restrict his ability to provide for his family and transition into post-clinical life.

## CONCLUSION

In a very meaningful way, Dr. Malik has already begun serving a sentence: he accepted responsibility, paid restitution, and stepped away from the profession that defined his identity and legacy. A non-custodial sentence of probation is consistent with the goals of sentencing and reflects the seriousness of the offense, while acknowledging that the conduct in this case was a deviation and rare departure from a lifetime defined by integrity and service. After considering the § 3553(a) factors and the joint recommendation of the parties, Dr. Malik respectfully requests that the

Court sentence him to one year of probation without a domestic travel or employment restriction.

                Respectfully submitted,

                **MARKUS/MOSS PLLC**
                40 N.W. Third Street, PH1
                Miami, Florida 33128
                Tel: (305) 379-6667
                markuslaw.com

                By:    /s/ David Oscar Markus
                        David Oscar Markus
                        dmarkus@markuslaw.com

                        /s/ Lauren Field Krasnoff
                        Lauren Field Krasnoff
                        lkrasnoff@markuslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

                                    By:    /s/ David Oscar Markus
                                                David Oscar Markus
                                                dmarkus@markuslaw.com

                                                /s/ Lauren Field Krasnoff
                                                Lauren Field Krasnoff
                                                lkrasnoff@markuslaw.com